[No. 29457. Department One. December 7, 1944.]

W. W. WILLIAMS, *as Trustee, Plaintiff*, v. CONTINENTAL SE-CURITIES CORPORATION, *Defendant*, WILLIAM McLAUGH-LIN, *as Executor, Intervener*, JAY E. DOOTSON, *Respondent*, FRANK E. WILLIAMS, *Appellant*.[1]

[1]Reported in 153 P. (2d) 847.

*Tyre H. Hollander,* for appellant.

*Loren Grinstead* and *Arthur Grunbaum,* for respondent.

*Croson, Johnson & Wheelon,* for plaintiff.

STEINERT, J.—This appeal presents a controversy primarily between two individuals who had been competing bidders at a sheriff's sale of real property. However, other persons, original parties in the action, have an interest in, and are indirectly affected by, the results. The individual whose bid at the sale was the highest in amount has appealed from an order confirming sale of the property to the person whose bid was next highest.

There is little dispute as to the facts. In December, 1926, the owner of an apartment house building in Seattle executed a mortgage thereon to secure a bond issue of forty-five thousand dollars. The mortgage became in default and was thereafter foreclosed by decree entered March 9, 1944. The total amount of the judgment, including principal, interest, trustee's fees, and attorneys' fees, was $65,327.50. The decree was based on a stipulation which provided that the property should not be sold for less than thirty-three thousand dollars; that the plaintiff trustee should satisfy any part of the judgment remaining unpaid after application of the purchase price to the indebtedness; and that the defendant should execute to the purchaser a deed to the property, including any right or equity of redemption.

A writ of execution, also termed an order of sale, directed to the sheriff, was duly issued and the sheriff thereupon published and posted notice of sale to be held at 10 a. m. on April 15, 1944. At the request of the plaintiff in the action, the sale was postponed, first to April 22nd, and then to April 29th, at the same hour and place.

The sale was conducted by Mrs. L. E. Anderson, a deputy sheriff. Plaintiff attended the sale accompanied by his attorney and made an opening bid of thirty-three thousand dollars, but went no further in the bidding. The fourth bid, amounting to thirty-three thousand seven hundred dollars, was made by a Mr. Harris, who likewise offered no further bid. From that point on, the bidding was somewhat spirited between the respondent herein, Jay E. Dootson, and the appellant, Frank E. Williams who, it may be stated, is no relation of the plaintiff, W. W. Williams. Dootson's last bid was thirty-six thousand six hundred dollars, and appellant then bid thirty-six thousand seven hundred dollars, at which figure the sheriff "struck off" the property to the appellant as being the highest and best bidder.

Appellant, however, did not have with him the amount of cash necessary to comply with his bid. He was not personally known to the deputy sheriff who conducted the sale nor had he at any time prior to, or during, the foregoing occasion, given the deputy any intimation as to his personal

identity or financial responsibility. He introduced himself simply as Mr. Williams. It was shown upon the trial, however, that appellant was born and reared in Seattle, had been in business in that city since 1919, had for many years been engaged in the same type of vocation as that in which the plaintiff was engaged, and was well known to the plaintiff in the action.

At the conclusion of the bidding, appellant inquired of the deputy sheriff whether he might pay a small sum down and thereby hold the property for the time being but he was told by her that, under the law, execution sales were for cash and that he would have to pay the full amount forthwith. He thereupon asked for additional time within which to procure the amount necessary to make full payment. It was then 10:12 o'clock a. m. The deputy gave him until 10:45 o'clock to produce the cash or a certified check and at the same time announced to all persons attending the sale that, if the appellant did not produce the required amount within the time specified, the property would then be struck off to the next highest bidder. Having given these instructions, the deputy temporarily left the place where the sale was being conducted.

It appears that, prior to the time of the sale, appellant had made an arrangement with a real estate firm having offices in the Old Times Building at Fifth avenue and Stewart street, in the city of Seattle, whereby he was to secure from that firm the amount of money necessary to cover his bid for the property, whatever that amount might be. Having but thirty minutes within which to produce the money, appellant at once set out to accomplish that objective. He was met, however, by a series of events which caused one delay after another.

It was Saturday morning and traffic was congested. First, appellant had some difficulty in finding a place in which to park his automobile near the Old Times Building. Then, the real estate firm from which he was to obtain the money was operating with a skeleton crew of employees on that day and therefore could not give prompt service. It took some time before one of its employees could make out the

company's check, drawn on the Seaboard Branch of the Seattle-First National Bank, which is located at Fourth avenue and Pike street in Seattle. The check required the signatures of two officers of the company. Only one officer was present at the time, and it was necessary to wait several minutes for the return of another officer. However, while at the real estate company's office, appellant did succeed, through telephone communication, in getting from the deputy sheriff an extension of time to 10:58 a. m. to comply with his bid.

Having obtained a check for the required amount, appellant's next mission was to go to the bank to get the check certified. Again he encountered traffic difficulties. After finding a place to park in the vicinity of Fourth avenue and Pike street, he went into the bank, but found a long line of people at the window where checks are customarily certified. A man near the head of the line courteously surrendered his place to the appellant, but even with that assistance it took about fifteen minutes to get the check certified.

Appellant then hastened to his car, and found that he had received a traffic slip for parking in an illegal zone. This caused more delay. He then drove hurriedly to the courthouse but could find no parking place nearer than two blocks away. Having finally parked his car, he ran all the way to the courthouse where he arrived at 11:07 a. m. Upon his arrival there, however, he learned that the property had just been sold to respondent, the next highest bidder, for thirty-six thousand six hundred dollars.

Appellant then got in touch with the deputy sheriff and tendered to her the certified check. The tender was refused, upon the ground that the time for completing an execution sale could not lawfully be extended by the sheriff or his deputy beyond the expiration of one hour after the time stated in the notice of such sale.

With reference to what had occurred in the meantime, the evidence discloses that a few minutes before eleven o'clock a. m. of that day, and while the appellant was still absent on the mission described above, the deputy sheriff

returned to the place where the sale had previously been in progress. All of the persons who were present at, and had participated in, the original bidding, with the exception of the appellant, were still there. At 10:58 a. m. the officer announced that the property would be offered for sale to respondent Dootson, the next highest bidder, for thirty-six thousand six hundred dollars, which was the amount of his last bid. After a conference between Mr. Dootson and his attorney, the latter stated that his client would purchase the property at the price bid by him, thirty-six thousand six hundred dollars.

The one disputed question of fact in the case is whether or not the deputy sheriff at that time called for any further bids. Appellant's evidence was to the effect that she did not do so, while respondent's evidence, which included the affidavit of the deputy sheriff herself, as well as other affidavits and also testimony in open court, was to the effect that she did inquire whether there were any other bidders, but that no one answered, and that she thereupon struck off the property to respondent Dootson. The oral decision of the trial court discloses affirmatively that the court found that the deputy had asked whether anyone else wanted to bid, that no one responded, and that the deputy thereupon accepted Mr. Dootson's bid.

There is undisputed evidence in the record that it has always been the custom and practice in King county for the sheriff, in conducting execution sales, to offer the property to the second highest bidder, whenever the highest bidder fails to make good his bid by payment within the hour after the time fixed in the notice of sale. It also appears from the record, without dispute, that during the week prior to the day of sale, an arrangement had been made by Mr. Dootson's attorney with the deputy sheriff for the acceptance of Mr. Dootson's check at the time of sale, in the event he should be the successful bidder. As indicated previously herein, plaintiff and his attorney were present throughout all of these proceedings, and neither of them made any objection to any of the acts or statements of the deputy

sheriff, but maintained a strictly neutral attitude as to everything that was then and there said or done.

The sheriff promptly made return of the writ of execution and paid into the registry of the court the sum of thirty-six thousand six hundred dollars received from Mr. Dootson for the property. At the expiration of ten days, both the plaintiff and the respondent purchaser moved for an order confirming the sale. Appellant filed his objections to such confirmation and at the same time petitioned the court for an order requiring the sheriff to accept his certified check for thirty-six thousand seven hundred dollars, and to make return of sale of the property to appellant for that sum.

The matter came on for hearing before the court on the motions, objections, and petition. Affidavits and oral testimony were presented. Appellant also tendered his certified check for thirty-six thousand seven hundred dollars, but the tender was refused by the court. After argument by counsel, the court entered an order overruling appellant's objections, denying his petition, and confirming the sale of the property to respondent. This appeal followed.

Prior to the time of the hearing before the superior court, the respondent Dootson served and filed a motion to strike appellant's objections to the confirmation of sale, and also a demurrer to the objections, on the ground that, under Rem. Rev. Stat., § 591 [P. C. § 7908], hereinafter quoted, only the judgment debtor or his legal representative is entitled to object to such confirmation. Without specifically ruling on that question, the trial court permitted appellant to introduce his evidence in support of his objections. Respondent again urges, in this court, his contention that appellant is not entitled to object to the confirmation of the sale. Appellant contends, on this point, that § 591 is neither all-inclusive nor exclusive, and that under the common law a bidder at an execution sale is entitled to object to its confirmation. In support of his contention, he cites *Miller v. Achurch*, 50 Ore. 478, 93 Pac. 332, and several other cases.

This initial question is an interesting one, and much can be said for either side of the argument. However, since our

conclusions upon the principal questions in the case are determinative of the entire matter, we shall, as did the trial court, assume, without deciding, that the appellant may raise objections to the confirmation of the sale.

Respondent in his brief makes the further contention that appellant is not an aggrieved party, within the meaning of Rem. Rev. Stat., § 1716 [P. C. § 7290], and therefore cannot appeal from the order confirming the sale. Having assumed, for the purpose of this case, that appellant may file objections to the confirmation of the sale, we must, and will, likewise assume, for present purposes, that he may appeal from an adverse decision on that question.

The principal questions in the case are (1) whether, in the proceedings concerning the sale, there were substantial irregularities, of such gravity as to impair the validity of the sale; and (2) whether, in confirming the sale, the trial court abused its judicial discretion. The two questions are intimately related and will be considered together.

Sales of real property under execution are, in general, regulated and governed by statute. Rem. Rev. Stat. (Sup.), § 582 [P. C. § 7905], provides that notice of sale of real property shall be published and posted for a specified length of time prior to the day of sale. Rem. Rev. Stat., § 583 [P. C. § 7906], provides that all sales of real property under execution, orders of sale, or decree shall be made by auction between nine o'clock in the morning and four o'clock in the afternoon, and that sales of real property shall be made at the courthouse door on Saturday. With reference to these two sections of the statute, appellant's contention is that the manner in which the sale of the property was conducted by the deputy sheriff, as above described, did not constitute an "auction," but was, in effect, merely a private sale.

Rem. Rev. Stat., § 585 [P. C. § 7895], which relates to the postponement of sales, provides:

"If, at the time appointed for the sale, the sheriff should be prevented from attending at the place appointed, or, being present, should deem it for the advantage of all concerned to postpone the sale for want of purchasers, or other sufficient cause, he may postpone the sale not exceeding one

week *next after the day appointed,* and so from time to time, for the like cause, giving notice of every adjournment by public proclamation made at the same time, and by posting written notices of such adjournment under the notices of sale originally posted by him. The sheriff, for like causes, may also adjourn the sale from time to time, not exceeding thirty days beyond the day at which the writ is made returnable, with the consent of the plaintiff indorsed upon the writ." (Italics ours.)

It is stated by the appellant and conceded by the respondent that at no time on April 29, 1944, which was the day of the sale, did the sheriff postpone or endeavor to postpone the sale in accordance with the provisions of the foregoing section of the statute. One of appellant's alternative contentions is that the sheriff should have followed the directions of that section, while respondent contends that none of the statutory reasons for postponement or adjournment of the sale then existed.

Rem. Rev. Stat., § 587 [P. C. § 7897], which prescribes the form and manner of selling real estate under execution, directs the sheriff to proclaim aloud, at the place of sale and in the hearing of all bystanders, that he is about to sell the property described, upon the execution as read, and to state the amount which he is required to make upon the execution. Appellant contends that, although the deputy sheriff may have complied with the provisions of this section before the bidding began, at about 10 a. m., of the day in question, she was nevertheless derelict in duty when, on renewing the proceedings at 10:58 of the same day, she failed to reiterate the proclamation prescribed by the foregoing statute. Respondent of course contends that it was unnecessary to do so.

Rem. Rev. Stat., § 590 [P. C. § 7900], upon which both parties herein build a strong argument, provides, in part, as follows:

"*The officer shall strike off the land to the highest bidder, who shall forthwith pay the money bid to the officer,* who shall return the money with his execution and his doings thereon to the clerk of the court from which the execution issued, according to the order thereof. . . ." (Italics ours.)

Finally, Rem. Rev. Stat., § 591 [P. C. § 7908], makes full provision for confirmation of sales, in the following manner:

"Upon the return of any sale of real estate as aforesaid, the clerk shall enter the cause, on which the execution or order of sale issued, by its title, on the motion docket, and mark opposite the same: 'Sale of land for confirmation,' and the following proceedings shall be had:

"(1) The plaintiff at any time after ten days from the filing of such return shall be entitled, on motion therefor, to have an order confirming the sale, unless the judgment debtor, or in case of his death, his representative, shall file with the clerk within ten days after the filing of such return, his objections thereto.

"(2) If such objections be filed the court shall, notwithstanding, allow the order confirming the sale, unless on the hearing of the motion, it shall satisfactorily appear that there were substantial irregularities in the proceedings concerning the sale, to the probable loss or injury of the party objecting. In the latter case, the court shall disallow the motion and direct that the property be resold, in whole or in part, as the case may be as upon an execution received of that date."

It is conceded that no one standing in the position of judgment debtor, or his legal representative, has ever filed any objection to the confirmation of the sale which is here involved.

As stated above, we are assuming herein, without so deciding, that appellant, as well as the persons designated in subdivision (1) of Rem. Rev. Stat., § 591, is entitled to file objections to the confirmation. With reference to that section in its entirety, appellant contends that there were substantial irregularities in the proceedings concerning the sale and that the trial court abused its judicial discretion in confirming the sale notwithstanding such irregularities. Respondent's contention is, of course, to the contrary.

■ It is the policy of the law that execution sales should be so conducted as to multiply bidders, promote competition, and effect sale of the property to the highest responsible bidder. 21 Am. Jur. 113, Executions, § 220; 33 C. J. S. 438, Executions, § 438.

Under the statutes hereinabove referred to, judicial sales are to be conducted in the same manner as execution sales.

■ Although the duties of the officer selling the property are ministerial in their nature, calling for an observance on his part of all statutory requirements relating to such sales, nevertheless, within these limits, he is invested with a reasonable latitude of discretion as to the time and manner of performing such duties. 21 Am. Jur. 100, 105, Executions, §§ 196, 205; 33 C. J. S. 438, Executions, § 201; 2 Anderson, Sheriffs, Coroners, Constables 529, § 567; 2 Freeman, Executions (3d ed.) 1663, § 288. In 31 Am. Jur. 423, Judicial Sales, § 42, it is said:

"An officer appointed to make a sale has the power to accomplish that object, and he is usually invested with a reasonable discretion as to the time and manner of its exercise, which he is not at liberty to overlook or disregard. Acting under the decree, he has duties to perform to the complainant, to the vendor, to the purchaser and to the court. He is bound to exercise his best judgment in the performance of all those duties, and to adopt all necessary and proper means to fulfil the directions. As a general rule, all that can be required of him in the exercise of his discretion is that he should have proper qualifications, use due diligence in ascertaining the circumstances, and act in good faith and with an honest intention to perform his duty. In this country, the officer is often indulged with a greater latitude of discretion, in some respects, in making sales of property under a decree than is allowed to a master in chancery in England, although, on the other hand, our courts have, as occasion seemed to require, guarded such sales with even more precautionary restrictions than have been adopted by the English courts."

Proceeding from these general rules, we come to a consideration of the specific contentions made by the respective parties herein. It is the appellant's position that, when the property was struck off to him as the highest and best bidder, the property was "sold," and he became the purchaser thereof under a binding contract from which neither party could withdraw. We do not agree with that contention to its full extent.

■ As stated in 31 Am. Jur. 445, Judicial Sales, § 87, a bid at a judicial sale is a mere offer, which must be accepted in order to constitute a binding contract. The authorities

cited in the footnotes to that section amply support the statement. Accord: *In re Spokane Savings Bank,* 198 Wash. 665, 89 P. (2d) 802.

■ Acceptance, however, must be in accordance with the terms of the sale, and, under the provisions of Rem. Rev. Stat., § 590 as quoted above, when the property is struck off to the highest bidder he must forthwith pay "the money bid," to the officer. In other words, acceptance of the bid is conditioned upon its being a cash bid payable as prescribed in the statute. Until and unless the bidder makes such payment he acquires no interest in the property. 21 Am. Jur. 120, Executions, § 234. In 2 Anderson, Sheriffs, Coroners, Constables 533, § 570a, it is said:

"It is, of course, the officer's duty to sell to the highest bidder, but this means the highest bidder who will comply with his bid, and, if one at a sheriff's or constable's sale bids for property, and fails to pay his bid, the officer may expose the property again to public sale, or confirm the next highest bid by receiving the money and making the title to such bidder."

■ Furthermore, the sheriff has the right to judge of the solvency of bidders, and may refuse to accept the bid of an insolvent or irresponsible person. 33 C. J. S. 461, Executions, § 214; 21 Am. Jur. 109, Executions, § 213. Accordingly, it was held in *Hobbs v. Beavers,* 2 Ind. 142, 52 Am. Dec. 500, that the refusal of a sheriff to cry a bid made by a stranger, unless the latter would make himself known or give evidence of his ability to conform to the terms of the sale, does not render the sale void on account of the property being sold to another person who was not the highest bidder.

It will be recalled that appellant did not make known his identity to the deputy sheriff nor did he at that time come forward with any evidence of his financial responsibility. In any event, he did not then and there comply with his bid by paying the amount thereof in money to the deputy. Had the appellant tendered his uncertified check, the officer would have been under no obligation to accept it. She might have accepted it, but in doing so she, or rather

her principal, might also have thereby incurred certain liabilities which it is unnecessary to discuss here.

██ In this connection, the question arises as to the meaning of the word "forthwith," as used in Rem. Rev. Stat., § 590. Reference to 17 Words and Phrases (Perm. ed.) 414 *et seq.,* will disclose that the term has a variety of connotations and that in determining its meaning in a particular instance regard must be had to the nature of the act or thing to be done. It is generally held, however, that the term does not mean "instantaneously," or "without any interval of time," but, rather, means "as expeditiously as under the circumstances, is reasonably possible." In *State ex rel. Department of Finance, Budget and Business v. Thurston County,* 6 Wn. (2d) 633, 108 P. (2d) 828, this court was called upon to define the word "forthwith" as used in Rem. Rev. Stat., § 6930 [P. C. § 2827]. We said:

"While the statute says that the superintendent [of the hospital for the insane] shall 'forthwith' examine the patient and determine his classification, that word must be given a reasonable construction. The term has been said to be a relative one and an elastic expression. In determining its meaning in a particular case, regard must be had to the nature of the act or thing to be determined and the circumstances of the case. So far as time is concerned, there is no precise definition of the term. Its import varies with the particular case, and will imply a longer or shorter period according to the nature of the thing to be done. 25 C. J. 998; *State ex rel. Lefebre v. Clifford,* 65 Wash. 313, 118 Pac. 40; *State ex rel. Giles v. French,* 102 Wash. 273, 172 Pac. 1156."

See, also, Black's Law Dictionary (2d ed.) p. 516; 2 Bouvier's Law Dictionary (3d Rev.) p. 1289.

██ In the instant case, it could not have been expected that the parties interested in purchasing the property would have thirty-three thousand dollars or more in their pockets at the place of sale; and, since there was to be competitive bidding, no one could tell just how much would be required of the successful bidder. It was therefore proper for the deputy sheriff to allow the appellant, as the highest bidder, a reasonable time to produce the amount of his bid.

What was a reasonable time would necessarily depend upon the circumstances. In this instance the deputy allowed the appellant from 10:15 to 10:58, a period of forty-three minutes.

We cannot say as a matter of law that this was an unreasonably short time under all the circumstances then existing. It must be remembered that the time to be allowed a successful bidder is time to *produce* the money, not time to go out and endeavor to procure it by negotiations with other persons. If in this case, the money had been in the bank in the appellant's account, he could undoubtedly have procured a certified check in the time allowed. A considerable part of the time expended by the appellant in securing the money elapsed while he was in the office of the firm from which he expected to procure the necessary amount. If the sheriff were required to wait until bidders had exhausted their efforts to procure the money with which to meet their bids, execution sales would amount to nothing more than putting a price on a piece of property without any assurance that a prospective purchaser would be able to procure the money with which to complete the purchase.

Another very important consideration in this instance was the fact that there were at least two other persons present, and remaining at, the place of sale who were willing to pay more than thirty-three thousand dollars, the upset price fixed by the court for the property. It was the sheriff's duty, we think, to take proper precautions to insure the probability of a sale to one or another of these bidders if the appellant did not return promptly.

As stated before, the deputy sheriff seems to have had the idea that it was obligatory, in any event, for her to complete the sale within the hour, that is, by eleven o'clock. We do not place our decision on that ground, for if it is necessary or proper to give the highest bidder a reasonable time to produce the amount of his bid, such time might well extend beyond the expiration of the hour. For instance, on a particular day of sale, there might be a number of execution sales to be held. The last one might not begin

until a very few minutes before the expiration of the hour, leaving little, if any, time for the successful bidder to bring the money or certified check from the bank of deposit. On this phase of the case we rest our decision upon the ground that it cannot be said as a matter of law that the time allowed to the appellant was unreasonable under all the existing circumstances.

Appellant says "there is no adjudicated case in the U. S. that meets the instant case on all fours." An independent search has revealed one case that comes very near meeting that degree of similarity: *Dazet v. Landry,* 21 Nev. 291, 30 Pac. 1064. In an action for partition, the sheriff was ordered to sell property at public auction for the highest cash price, the same as property is sold under execution. The first sale by the sheriff proving abortive, the officer readvertised the property and on the day set exposed the property for sale for cash. Napoleon Landry, one of the defendants, bid eight thousand five hundred dollars, which was the highest bid offered, and the property was struck off to him, whereupon Landry asked the sheriff for fifteen minutes' time to get the money to make good his bid. The sheriff granted his request and at the same time notified Landry that it would not be considered a sale until the money was paid down. At the same time, also, the sheriff requested the bystanders to remain, stating that the pending transaction would not be considered a sale until the money was paid. The sheriff waited *thirty minutes.* Landry not returning to make his bid good, the property was resold by the sheriff to F. A. Lacrouts for the sum of six thousand one hundred dollars, that being the highest sum bid at that time.

Contention was made on appeal that Napoleon Landry was the highest and best bidder, and that when the property was struck off to him by the sheriff it was an absolute sale. That is substantially the contention made by the appellant in this case. The Nevada court said:

"The highest bidder acquires no title to the thing purchased but by payment of the purchase money, and if he fails to do this within a reasonable time, a re-sale may lawfully be made."

And further:

"The sheriff as referee is vested with discretionary powers in the sale of property in partition. If he had reason to believe that Landry was an irresponsible bidder, he could and should have refused to entertain any offer made by him; but having conditionally accepted the bid, it was nothing but justice to all parties that Landry be granted the time he asked for to give him an opportunity to make his bid good; and he not having returned within the thirty minutes, it was the duty of the sheriff to consider Landry an irresponsible bidder and proceed as he did and re-sell the premises without unnecessary delay and the additional expense of re-advertising."

We approve the decision in that case and regard its reasoning as applicable to the case at bar.

Appellant makes some contention that the sheriff postponed the sale, as heretofore described, without complying with the provisions of Rem. Rev. Stat., § 585, quoted above. In our opinion that section has no application to the situation presented by this case. That section has reference to postponement of sales to a day other than the day already set, and for causes which in the judgment of the sheriff make it inadvisable to hold a sale at all upon the day originally appointed. The situation here is not at all comparable to the circumstances envisaged by that section. There was no postponement of the sale, but simply a suspension of the proceedings for the time being in order to permit the appellant to make his bid good. On his failure to do so, the sale continued regularly to its proper consummation.

Appellant next contends that the respondent, Dootson, was not a purchaser because (1) appellant himself was the highest and best bidder, (2) the property was not again proclaimed for sale, (3) no opportunity was given for further bidding, and (4) the property was struck off to Dootson, not for cash, but for his personal check. The first three of these contentions have already been sufficiently answered by what has previously been said herein. As to the fourth, or last, contention, it is a sufficient answer, we think, to say that if the appellant is not adjudged the legal

purchaser of the property, then he has no interest in the matter, nor is it of any concern to him who the legal purchaser may be. Aside from that consideration, however, the deputy sheriff had apparently satisfied herself, by previous investigation, that respondent was a solvent, responsible person. In other words, she had fortified herself against any risk that the sheriff might otherwise have assumed in accepting something other than cash. Apparently, also, little risk was incurred, for it appears that the check was honored. Appellant had the opportunity to make similar arrangements with the sheriff, had he taken the time and trouble to do so. It is also worthy of note, as shown above, that appellant did not have the money under his immediate control at the time of bidding for the property, and his failure to make good his bid was due, in part at least, to the fact that he still had to complete his arrangements for obtaining the necessary amount from a third party.

 We come, finally, to a consideration of Rem. Rev. Stat., § 591, with reference to confirmation of sales. As provided in that section, the court shall, on hearing, confirm the sale unless it then satisfactorily appears that there were substantial irregularities concerning the sale, to the probable loss of the party objecting.

It is the general rule, followed in this state, that confirmation of judicial sales rests largely within the discretion of the trial court, and will not be reviewed except for manifest abuse of such discretion. *Mellen v. Edwards,* 179 Wash. 272, 37 P. (2d) 203; *Davis Estate, Inc. v. Rochelle,* 181 Wash. 81, 42 P. (2d) 788; *Home Owners' Loan Corp. v. Callahan,* 2 Wn. (2d) 604, 98 P. (2d) 1077; 31 Am. Jur. 458, Judicial Sales, § 116.

In 21 Am. Jur. 123, Executions, § 242, appears this statement:

"The confirmation of an execution sale is generally regarded as within the sound discretion of the court, but this discretion may not be abused by an arbitrary or capricious exercise thereof. Execution sales are not scrutinized by the courts with a view to defeat them. On the contrary, every reasonable intendment will be made in their favor so

as to secure, if such can be done consistently with legal rules, the object they were intended to accomplish."

Under that section of the statute, the sale is presumed to be valid unless a clear showing of substantial irregularities is made to the court, and the burden of making such showing rests upon the party objecting.

Appellant does not claim that there were any irregularities of a jurisdictional nature, nor do we think that he seriously contends that respondent's bid, which was only one hundred dollars less than his own, was so inadequate that its acceptance should shock the conscience of the court. It will be borne in mind that the property was sold to the respondent for thirty-six thousand six hundred dollars which was three thousand six hundred dollars above the upset price. The only irregularities attempted to be shown by the appellant were those with which we have already dealt in detail, and which we find were not irregularities, much less substantial. We agree with the trial court's disposition of the matter.

The order of confirmation is affirmed.

SIMPSON, C. J., MILLARD, JEFFERS, and GRADY, JJ., concur.