[No. 34125.   Department Two.   February 7, 1958.]

HOWARD P. BRAMAN *et al., Respondents,* v. JOHN KUPER *et al., Appellants.*[1]

'Reported in 321 P. (2d) 275.

*Leslie N. Jochimsen,* for appellants.

*Leo Teats* and *Ralph Teats,* for respondents.

HUNTER, J.—This is an appeal from an order confirming an execution sale over the objection of the judgment debtor.

John Kuper was the owner of several tracts of farm land in Pierce county, Washington. The realty, with certain personal property located thereon, was subject to the claims of a number of creditors.

Howard and Carrie Braman, husband and wife, were the mortgagees named in nine real-estate mortgages and four chattel mortgages covering the Kuper property. They instituted proceedings against John Kuper to foreclose these mortgages and joined as parties defendant Lucille Kuper, the United States government, and other creditors having claims superior to some of their mortgages.

Lucille Kuper (who was not, at that time, the wife of John Kuper), filed a cross-complaint seeking judgment against John Kuper on her note and a foreclosure of her mortgage. During the trial, John and Lucille Kuper stipulated that a judgment should be entered in the amount of $6,004.08, and that Lucille's mortgage should be foreclosed.

At the conclusion of the trial, the court entered a decree (which covers thirty-eight pages in the transcript) in which each of the plaintiffs' thirteen causes of action was con-

sidered separately. The mortgages were ordered fore-closed and the property sold, with the proceeds to be distributed to the creditors in accordance with their priority as set forth in the decree. The court ordered further that Lucille Kuper's mortgage be foreclosed.

Thereafter, a writ of execution directed to the sheriff was issued, and the sheriff thereupon published notice of sale. Prior to the day of sale, the four causes of action involving John Kuper's personal property were settled. On August 17, 1956, the day of sale, John Kuper approached deputy sheriff Elmer Hurd, who was in charge of the sale, and requested that the property be sold by the acre since it consisted of several parcels. This request was refused, and the property was offered for sale as "one farm."

Mr. Braman was the only bidder present at the sale, and the property was "struck off" to him for a bid of $55,586.12. He set off the amount of the unsatisfied judgment, $42,781.45 (total amount of the nine real-estate mortgages), and delivered to the deputy sheriff the sum of $6,792.92. On August 24, 1956, the return of sale was made, and the deputy sheriff paid into the registry of the court the amount he had received from Mr. Braman.

After the expiration of ten days, Mr. Braman moved for an order confirming the sale. John Kuper (judgment debtor) filed his objections to such confirmation.

At the hearing on this matter, John Kuper, in support of his objections, made two principal arguments: (1) that the amount of the bid, over and above the amount of the plaintiffs' judgment, was not forthwith delivered to the sheriff, and, in fact, the amount delivered was $6,101.75 less than the amount bid; (2) that the property should have been sold in separate parcels.

Elmer Hurd, the deputy sheriff, testified that he received the amount bid, over and above the judgment on which execution was issued; that he based his determination to sell the property as "one farm" on a diagram of the area, the tremendous amount of money involved, and the fact that there was only one bidder present on the day of the sale.

Although John Kuper testified that the parcels had been acquired over a long period of time and had been farmed as three farms, he did admit on cross-examination that the parcels, for the most part, and for several years prior to this action, had been farmed together.

In respect to the manner of payment, Mr. Braman testified as follows:

"Q. Did you bid or was the bid in your behalf in the sum of $55,586.12? A. There was. Q. Was the amount of principal and interest on the judgment due on the nine causes of action due you, $42,781.45? A. It would be in that neighborhood. Q. What disposition was made of the approximately $13,000.00 excess between the $42,781.45 of your judgments and interest and costs and the $55,586.00? A. Approximately $6,144.00 was paid for Lucille Kuper's mortgage. *Approximately $6,000.00 was paid out in judgments which preceded some of our mortgages.*" (Italics ours.)

He testified further that he purchased these other judgments after the sale and, in most instances, paid a sum less than the actual judgments.

After argument by counsel, the trial court entered an order confirming the sale, from which order, John Kuper has appealed.

Before considering the appellant's assignment of error, we must pass upon the motion made by the respondents to strike the appeal for failure of the appellant to give notice of appeal to Lucille Kuper and the United States government.

■ Notice of appeal is required to be served only upon those parties to the record whose interests *might be adversely* affected by the decision of this court on appeal. *In re Sims' Estate,* 39 Wn. (2d) 288, 235 P. (2d) 204 (1951); *Coleman v. Wisbey,* 37 Wn. (2d) 737, 225 P. (2d) 1067 (1951).

■ Appellant did not serve notice of appeal on Lucille Kuper or the United States government, and, therefore, applying the rule, the appeal will have to be dismissed if their interests could be adversely affected by our decision.

*Brewster Cooperative Growers v. American Fruit Growers,* 19 Wn. (2d) 131, 141 P. (2d) 871 (1943). (See, however, Rule on Appeal 33, 34A Wn. (2d) 33, as amended, effective March 1, 1957, for procedure in serving notice of appeal.)

Our statute regarding the confirmation of execution sales is RCW 6.24.100, which provides in part:

"(3) Upon the return of the execution, the sheriff shall pay the proceeds of sale to the clerk, who shall then apply the same or so much thereof as may be necessary, in satisfaction of the judgment. If an order of resale be afterwards made, and the property sell for a greater amount to any person other than the former purchaser, *the clerk shall first repay to such purchaser the amount of his bid out of the proceeds of the latter sale.*

"(4) *Upon a resale, the bid of the purchaser at the former sale shall be deemed to be renewed and continue in force, and no bid shall be taken, except for a greater amount.*" (Italics ours.)

■ From our reading of this statute, we cannot see wherein the interests of either Lucille Kuper or the United States government would be adversely affected by any disposition we might make of this case on its merits. The priority of creditors entitled to share in the proceeds of the sale was established by the court's decree in the foreclosure action, which decree included the judgments of Lucille Kuper and the United States government. Assuming, for the sake of argument, that we were to order a resale of the property, the respondents' bid would be deemed renewed and continue in force and only a bid of a greater amount could be accepted. If the latter occurred, Lucille Kuper and the United States government would not be required to return any sums received by them pursuant to their priority judgments, the amount paid by the respondents on their bid would be returned to them, and the judgments they hold would be satisfied according to their priority from the proceeds of the second sale. Therefore, the motion to dismiss the appeal is denied.

Appellant assigns as error the order entered by the trial court confirming the execution sale.

■ At the outset, it must be borne in mind that it is a general rule followed in this state, that confirmation of judicial sales rests largely within the discretion of the trial court, and will not be reviewed except for manifest abuse of such discretion. *Williams v. Continental Securities Corp.*, 22 Wn. (2d) 1, 153 P. (2d) 847 (1944), and cases cited therein.

■ When objections are filed to the confirmation of an execution sale, the following section of RCW 6.24.100 is applicable:

"(2) If such objections be filed the court shall, notwithstanding, allow the order confirming the sale, unless on the hearing of the motion, it shall satisfactorily appear that there were *substantial irregularities* in the proceedings concerning the sale, *to the probable loss or injury of the party objecting.* . . ." (Italics ours.)

Therefore, the burden is on the objecting party to show (1) substantial irregularities, and (2) that the irregularities resulted in, or will result in, a "probable loss or injury" to him.

We will consider separately the two objections made at the hearing by the appellant to confirmation of the sale.

First, in respect to the manner of payment of the bid, counsel for the appellant, during the hearing in the trial court, argued, in part, as follows:

". . . the statutory mandate that the amount of the bid shall be paid by the bidder to the Sheriff and thence into Court,—there are other statutes in there that says that 'the Clerk of the Court's duty is to apply them on the judgments of the judgment debtor in the order of their priority.' It doesn't say that the parties may go outside the Court and pay things off separately. It says, 'That the money shall be placed there.'  And it is clear that in a case, particularly like one like Mr. Kuper's, where many people have interests in what he gets out of his land, it ought to be put in Court and kept in Court."

Appellant does not appear to have disputed the statement made by Mr. Braman that he paid about six thousand dollars purchasing the other judgments on the property which were superior to his mortgages. Further, in addition to the sum delivered to the sheriff, the respondents paid

into the registry of the court on August 23, 1956, the day before the return of sale was made, the sum of $1,258.08, which respondents contend was necessary to satisfy the judgment of the United States government. In essence, the appellant's argument was simply that payment was not made in the manner prescribed by RCW 6.24.090.

In his brief and in oral argument, appellant relied upon the *Williams* case, *supra*, contending that the bid of a prospective purchaser at an execution sale is merely an offer, and that acceptance is conditioned upon its being a cash bid payable as prescribed by statute.

The *Williams* case, *supra*, is clearly distinguishable from the case at bar upon its facts. In that case, the controversy was primarily between two individuals who had been competing bidders at a sheriff's sale of real property. Initially, the property was "struck off" to Williams as the highest and best bidder. However, when he failed to produce the amount of his bid within the time he was allowed, the sheriff sold the property to the next highest bidder. The question there was: When is a bid accepted? Williams objected to confirmation of the sale and appealed to this court from the order confirming the sale. We assumed, without deciding, that the unsuccessful bidder had the right to object to the confirmation of the execution sale, and assumed further that he had a right to appeal from an adverse order of the court. We affirmed the order confirming the sale, holding that Williams had not paid the amount of his bid as prescribed by statute and the sheriff did not abuse his discretion in selling the property to the next highest bidder, after he allowed Williams a reasonable time to secure the amount of his bid. The bid, *unpaid* before the sheriff sold the property to the next highest bidder, was held merely to be an offer which was not accepted. In this case, there was only one bidder, and the question appears to be *not the fact* of payment, but merely the procedure followed under which payment was made. In either case, the statute providing for the manner of payment (RCW 6.24.090), must be considered in the light of RCW 6.24.100 (2), as to

when irregularities require a resale of the property sold on execution.

There is no doubt that when the deputy sheriff accepted the cash bid by Mr. Braman, he was confused as to the amount actually payable. However, both the sheriff and the purchaser appear to have been acting in good faith, although mistaken either as to the facts or the statutory requirement concerning the required manner of payment. Nevertheless, it is evident that the trial court was of the opinion, when it confirmed the sale, that the manner in which payment was made did not result in "probable loss or injury" to the objecting party, the judgment debtor.

In 21 Am. Jur. 123, Executions, § 242, appears this statement:

"The confirmation of an execution sale is generally regarded as within the sound discretion of the court, but this discretion may not be abused by an arbitrary or capricious exercise thereof. Execution sales are not scrutinized by the courts with a view to defeat them. On the contrary, every reasonable intendment will be made in their favor so as to secure, if such can be done consistently with legal rules, the object they were intended to accomplish."

While we want it definitely understood that we do not condone a departure from the statutory procedure in respect to the payment of a bid made at an execution sale, under the particular facts of this case, as shown by the record, we cannot say that the manner of payment resulted in "probable loss or injury to the party objecting," or that the trial court abused its discretion in confirming the sale over this objection.

On appeal, in oral argument, counsel for the appellant for the first time contended that some of the judgments purchased by respondents were barred by the statute of limitations. Since this argument was not presented in the trial court, we will not consider it for the first time on appeal. *Lewis Pacific Dairymen's Ass'n v. Turner,* 50 Wn. (2d) 762, 314 P. (2d) 625 (1957). *Johnson v. Seattle,* 50 Wn. (2d) 543, 313 P. (2d) 676.

■ Secondly, in respect to the manner in which the sale was conducted, the appellant argues that the property should have been sold in parcels and not *en masse*. It is within the discretion of the sheriff to determine the manner in which the property shall be sold to bring the highest selling price obtainable. See *Brady v. Ford,* 184 Wash. 467, 52 P. (2d) 319 (1935), and cases cited therein; *Brice v. Minshull,* 137 Wash. 70, 241 Pac. 667 (1925). Appellant's objection to this method of sale by the sheriff was made known to the trial court. From the evidence adduced at the hearing, the court determined that the objections were insufficient on which to deny confirmation of the sale. On the basis of the record, we cannot say that the trial court manifestly abused its discretion in ruling on this objection.

The order confirming the sale is affirmed.

HILL, C. J., DONWORTH, ROSELLINI, and FOSTER, JJ., concur.

———————

May 15, 1958. Petition for rehearing denied.