# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In re: the matter of
THE GREIDER FAMILY TRUST

SEBASTIAN EUGENE GREIDER, a
single man,

    and

BYRNE MARIE GREIDER, a single
woman,

As Beneficiaries of the Greider Family
Trust,

          Appellants.

          v.

CHERYL GREIDER BRADKIN and
WILLIAM BRADKIN, wife and
husband, a marital community,

          Respondents.

No. 81194-1-I

DIVISION ONE

UNPUBLISHED OPINION

ANDRUS, A.C.J. — Siblings Sebastian and Bryne Greider appeal the superior court's order on cross motions for summary judgment dismissing their Trust and Estate Dispute Resolution Act (TEDRA), ch. 11.96A RCW, petition with regard to the Greider Family Trust, a testamentary trust established by their

Citations and pin cites are based on the Westlaw online version of the cited material.

grandparents. Because the trial court correctly determined there was insufficient evidence of breach of the Trustee's fiduciary duty or abuse of her discretion to warrant a trial, we affirm.

FACTS

In 1988, Eugene and Norma Greider created the Greider Family Trust (the Trust) for their benefit during their lifetimes and then for the benefit of their four children: Cheryl Greider Bradkin, Brett Greider, Buff Greider, and Laurey Greider. In October 2010, Norma, the Sole Trustor, passed away.[1] Cheryl began to administer the Trust as the Successor Trustee (the Trustee) and divided the Trust into four equal shares.

As Trustee, Cheryl began to pay estate expenses and prepare assets for distribution and sale. At the time of Norma's death, the Trust owned two parcels of real property in California: the 408 Oceanview property and the Los Altos property. In 2010, Brett was living at the 408 Oceanview property. The Trust sold the 408 Oceanview property in November 2011 and the Los Altos property five years later, in November 2016. Between 2011 and 2018, the Trustee made periodic partial distributions to and for the benefit of Brett and the other beneficiaries. The Trustee maintained an accounting spreadsheet to keep track of each beneficiary's distributions and share of costs. The Trustee also maintained a contemporaneous log to document her actions in administering the Trust.

---

[1] Because several of the parties involved share the same last name, we use first names where necessary for clarity.

Brett passed away unexpectedly in May 2018 in Guatemala, leaving his two adult children, Sebastian and Bryne Greider, as his sole heirs. Within days of Brett's death, Sebastian's and Bryne's stepfather requested Brett's financial information and directed the Trustee to treat him as the children's representative and to communicate only with him.

In July 2018, Sebastian and Byrne (Brett's heirs) filed a TEDRA petition, demanding an accounting and the distribution of Trust income. A year later, they filed a second amended petition, adding claims that the Trustee breached her fiduciary duty in various ways in administering the Trust and that those breaches resulted in damages of more than $289,000.

Brett's heirs then filed a motion for partial summary judgment. The Trustee also moved for summary judgment with respect to all claims. Both motions primarily relied on the same documentary evidence including the Trust document, the Trustee's accounting spreadsheet, the Trustee's log, and documentation of Brett's debt to the Trustors that was offset against his Trust share. In addition, the Trustee relied on professionally prepared forensic accounting documents spanning from October 2010 until September 2019 and on her own declaration.

Following a hearing, the court entered an order granting the Trustee's motion and denying Brett's heirs' motion. The court issued a separate letter ruling, explaining the basis for its decision. Brett's heirs appeal.

ANALYSIS

We review summary judgment orders de novo. In re Estate of Hambleton, 181 Wn.2d 802, 817, 335 P.3d 398 (2014). Summary judgment is proper only if there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. CR 56(c). A genuine issue of material fact exists where "reasonable minds could differ on the facts controlling the outcome of the litigation." Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). In determining whether an issue of material fact exists, the court must construe all facts and inferences in favor of the nonmoving party. Id.

As an initial matter, we can easily dispose of two of the arguments advanced by Brett's heirs. First, Brett's heirs focus on the trial court's letter ruling, characterizing the explanation of the court's reasoning as "findings," and arguing that in making those findings, the court improperly resolved factual disputes against them. But the function of a summary judgment proceeding is to determine whether a genuine issue of fact exists, not to determine issues of fact. Davenport v. Wash. Educ. Ass'n, 147 Wn. App. 704, 715 n. 22, 197 P.3d 686 (2008). As a result, our Supreme Court has "'held on numerous occasions that findings of fact and conclusions of law are superfluous in both summary judgment and judgment on the pleadings proceedings.'" Id. at 715 n. 23 (quoting Wash. Optometric Ass'n v. Pierce County, 73 Wn.2d 445, 448, 438 P.2d 861 (1968)). To the extent that the trial court made any findings, they are superfluous and because our review is de novo, we do not consider them.

Second, Brett's heirs claim that the Trustee was not entitled to a Trustee's fee, in addition to reimbursement of her expenses. But although the Trustee submitted a declaration in support of such a fee, she withdrew the request. There is no ruling on the issue for this court to review.

Fiduciary Duty to Brett's Heirs

Brett's heirs contend that the court erred in granting summary judgment because (1) they were owed fiduciary duties under the Trust equivalent to those owed to the primary beneficiaries named in the Trust, and (2) the Trustee breached those duties.

A trustee is a fiduciary for a trust's beneficiaries and owes them the "highest degree of good faith, care, loyalty and integrity." Esmieu v. Schrag, 88 Wn.2d 490, 498, 563 P.2d 203 (1977). "It is the duty of a trustee to administer the trust in the interest of the beneficiaries." Tucker v. Brown, 20 Wn.2d 740, 768, 150 P.2d 604 (1944). A trustee's duties and powers are determined by the terms of the trust, by common law, and by statute. In re Estate of Ehlers, 80 Wn. App. 751, 757, 911 P.2d 1017 (1996).

Since Brett did not predecease the Trustors, the Trust makes no express provision for his heirs.[2] Nevertheless, Brett's heirs contend that, as "qualified beneficiaries," as defined by RCW 11.98.002(2)(b), they are also "contingent

---

[2] The Trust provides that if a named beneficiary were to predecease the Trustors, the "Trust share set aside for that beneficiary shall then be distributed to the collective lawful issue of the deceased beneficiary." In the case that a beneficiary predeceases the Trustors, but has no heirs, then the Trust share of that beneficiary "shall then be distributed, equally," among the remaining beneficiaries.

beneficiaries" who are "entitled to the same fiduciary duty as primary beneficiaries."[3]

Brett's heirs cite no authority for this proposition. They rely on case law involving the interpretation and application of the prudent investor rule. See In re Estate of Cooper, 81 Wn. App. 79, 88, 913 P.2d 393 (1996) (the focus in applying the prudent investor rule is the trustee's conduct; the trust's performance is not controlling). Cooper involved a trust from which the decedent's surviving spouse only had the right to receive income from the trust during his lifetime with the corpus being distributed to her children upon the father's death. The children were thus named beneficiaries with a remainder interest in the trust corpus, significantly different circumstances from those here. Brett's heirs had no legal right to any portion of the Trust until Brett's death at which time they only had a right to whatever remained of Brett's share after the Trustee had offset Brett's share for expenses and advances.

Brett's heirs also cite commentary in the Restatement of Trusts which provides that the duty of impartiality in the case of multiple beneficiaries applies whether the beneficiaries' interests are "simultaneous or successive." See RESTATEMENT (SECOND) OF TRUSTS: DUTY TO DEAL IMPARTIALLY WITH BENEFICIARIES § 183 cmt. a. This does not further Brett's heirs' argument because a trustee

---

[3] A definition section added to chapter 11.98 RCW in 2013, distinguishes between "permissible distributees" and "qualified beneficiaries." 11.98.002(1), (2). The former is a trust beneficiary "currently eligible to receive distributions of trust income or principal." RCW 11.98.002(1). Brett was a permissible distributee during his lifetime. Both parties agree that Brett's heirs were "qualified beneficiaries" during Brett's lifetime because they would be permissible distributees "if the interests" of the permissible distributee, Brett, "terminated." RCW 11.98.002(2)(b).

only has a duty to successive beneficiaries when the trust is explicitly created for beneficiaries in succession. RESTATEMENT (SECOND) OF TRUSTS: IMPARTIALITY BETWEEN SUCCESSIVE BENEFICIARIES § 232. Specifically, a duty of impartiality applies when terms of a trust direct a trustee to pay income to one beneficiary for a designated period of time, and then to pay principal to another beneficiary. RESTATEMENT (SECOND) OF TRUSTS § 232 cmt. b. And even in those circumstances, the duty to balance potentially competing interests of beneficiaries does not equate to a duty to treat them equally; the trustee must be guided by the terms and purposes of the trust in weighing and prioritizing the interests of multiple beneficiaries. See RESTATEMENT (SECOND) OF TRUSTS § 232 cmt. c; RESTATEMENT (THIRD) OF TRUSTS: DUTY OF IMPARTIALITY; INCOME PRODUCTIVITY § 79 cmt. b. The Trust did not name Brett's heirs as successive beneficiaries. And while Brett's heirs' status as qualified beneficiaries gave them a right to receive limited information about the trust under RCW 11.98.072(1), they do not allege a violation of their rights under this provision.

Breach of Fiduciary Duties

Although Brett's heirs fail to establish that the Trustee owed fiduciary duties to them before May 2018 that were equivalent to the duties owed to the primary beneficiaries of the Trust, we nevertheless address their contention that the evidence demonstrates that the Trustee abused her discretion and/or violated her fiduciary duty by: (1) failing to immediately distribute each beneficiaries' Trust share upon the surviving Trustor's death, (2) disproportionately allocating expenses of the Trust, (3) reducing Brett's Trust share based on prior loans and

(4) distributing Trust funds to third parties on Brett's behalf, and (5) failing to provide an accounting.

A trustee is a fiduciary who owes the highest degree of good faith, diligence, and undivided loyalty to the beneficiaries. Estate of Jordan v. Hartford Accident & Indem. Co., 120 Wn.2d 490, 502, 844 P.2d 403 (1993). A trustee's duties and powers are determined by the terms of the trust, by common law, and by statute. Ehlers, 80 Wn. App. at 757

"[A] trustee presumptively has comprehensive powers to manage the trust estate and otherwise to carry out the terms and purpose of the trust." RESTATEMENT (THIRD) OF TRUSTS: POWERS AND DUTIES OF TRUSTEE § 70 cmt. a. Here, the Trust expressly grants "sole and absolute discretion" to the Trustee to administer the Trust and to make determinations "in the best interests of the beneficiaries." When a trust gives the trustee discretion to carry out the trust's objectives, a court may not intervene absent an abuse of the trustee's discretion. Templeton v. Peoples Nat'l Bank of Wash., 106 Wn.2d 304, 309, 722 P.2d 63 (1986). "A court will not interfere with a trustee's exercise of a discretionary power . . . when that conduct is reasonable, not based on an improper interpretation of the terms of the trust, and not otherwise inconsistent with the trustee's fiduciary duties." RESTATEMENT (THIRD) OF TRUSTS: JUDICIAL CONTROL OF DISCRETIONARY POWERS § 87 cmt. b.

(1) Delay in Final Distribution

Brett's heirs contend that the Trustee ignored the provisions of the Trust by failing to "immediately distribute each beneficiaries' share" in 2010 upon the

Trustor's death.  They also contend that the court erred by considering an unauthenticated letter to find that the Trustee justifiably relied on the advice of a certified public accountant in deciding to withhold funds and delay the final disbursement until October 2021 to account for possible tax liability arising from the 2016 sale of the Trust's real property.

Article nine of the Trust provides that, upon the death of the sole surviving Trustor, the Trustee "shall forthwith" divide the trust into four equal shares and adjust each beneficiary's share to account for "indebtedness" to the Trustors and "advances" made by them.  The Trust further provides that any of the named beneficiaries have the right of first refusal to purchase the Trustors' real property, if the "financial arrangements are acceptable" to the other three beneficiaries. Section two of article nine states that the Trust share set aside for each named beneficiary "shall forthwith terminate" and that the Trustee "shall distribute all undistributed net income and principal" to each named beneficiary, "free of the Trust."

Consistent with dictionary definitions, Brett's heirs interpret forthwith to mean "immediately."  BLACK'S LAW DICTIONARY 725 (9th ed. 2009).  But, our courts have recognized that the "context surrounding the act to be done 'forthwith' matter[s]." Keithly v. Sanders, 170 Wn. App. 683, 689, 285 P.3d 225 (2012).  And in some contexts, the term "'does not mean 'instantaneously,' or 'without any interval of time,' but, rather, means 'as expeditiously as under the circumstances is reasonably possible.'" Williams v. Continental Sec. Corp., 22 Wn.2d 1, 13, 153 P.2d 847 (1944) (interpreting "forthwith" as used in Rem. Rev.

9

Stat. § 590, a statute which related to a sheriff's sale of real property). In this case, given that the Trust contemplates the distribution of net income, allowed for settlement of certain estate expenses, required ascertaining beneficiaries' debts to the Trustors, gave beneficiaries the right of first refusal to buy real property and required distribution or liquidation of all Trust assets, it is abundantly clear that the Trust did not require the immediate distribution of all assets.

The record, including the detailed log of notes and accounting spreadsheet, establishes that within days of Norma's death, the Trustee divided the Trust into shares and began to settle expenses of the estate and prepare assets for sale. The record also indicates that in 2010, Brett was residing at one of the trust properties. The record reveals that substantiating the required adjustments to the Trust shares required a significant amount of investigation, and necessitated a review of at least twenty years' worth of documents, including check registers, notes, letters and emails. While it may have been unanticipated that the process of distributing all Trust assets would take more than ten years, there is no evidence in the record to suggest intentional or willful delay.[4]

It was not necessary for the court to rely on any inadmissible hearsay testimony in order to conclude that the Trustee did not abuse her discretion by failing to make a final distribution until after the statute of limitations expires in view of potential tax liability. The Trustee explained why she reserved the funds and stated that she received advice on the matter. That testimony was

---

[4] According to the evidence in the record, the Trust estate's assets in 2010 were valued at approximately $3.5 million and as of November 2019 over 90 percent of the assets had been distributed and closure of the estate was anticipated in October 2021.

admissible. The Trust expressly allows the Trustee to "set aside from Trust income reasonable reserves for taxes, assessments, insurance premiums" and other potential liabilities.

(2) Allocation of Expenses

Brett's heirs claim that the Trustee had no discretion to allocate Trust expenses unequally among the beneficiaries. Even if the Trustee had discretion to do so, they contend that she abused her discretion by allocating solely to Brett the cost of certain repairs to Trust property and attorney fees incurred in connection with a lawsuit filed by Brett's heirs' mother to enforce a judgment for unpaid child support.

But again, the Trust provides broad discretion to the Trustee to administer the Trust in a manner that the Trustee deems to be in the best interest of all the beneficiaries. The Trust specifically provides for payment of "all of the reasonable expenses attributable to the administration of the respective Trusts created in this agreement." The Trust also authorizes the Trustee to make "divisions and distributions of the Trust property . . . in any proportion they deem advisable" and to take all actions "reasonably necessary to administer each and every share of the Trust."

There is undisputed evidence that Brett was living, rent free, at the 408 Oceanview property, until he was forced to vacate the property due to a code violation. Certain modifications were required in order to bring the property into compliance. Brett's heirs fail to demonstrate any abuse of discretion based on the allocation to Brett's share of the relatively modest costs of those

modifications. And apart from conclusory and unsupported assertions, Brett's heirs likewise fail to establish that the circumstances of the 2011 lawsuit did not warrant retaining counsel, that counsel's fees were excessive, or that allocating the cost associated with the litigation to Brett was an abuse of discretion.[5]

(3) <u>Loans</u>

The express terms of the Trust required the Trustee to adjust each beneficiary's share based on outstanding debts to the Trustors. Brett's heirs claim that the Trustee abused her discretion by characterizing amounts paid by the Trustors directly or indirectly to Brett over the course of 15 years as loans, not gifts, and offsetting his share by $51,798.

First, we disagree that, in granting summary judgment as to this issue, the trial court improperly resolved a factual dispute. There is no dispute as to the amounts the Trustee characterized as loans and the evidence she relied on to support her determinations. Brett's heirs maintain that there is a "significant factual record" to refute the Trustee's evidence, but the factual evidence they refer to is a spreadsheet compiled by their stepfather declaring his opinion about

---

[5] The record indicates that the petitioners' mother sued the Trust in 2011 to enforce a child support judgment against Brett. Although the Trust included a protective clause providing that the Trust "shall not be subject to legal process or to the claims of any creditors, other than the creditors of a Trustor," the Trust paid the child support owed on Brett's behalf in November 2011 when the sale of the 408 Oceanview property closed. Brett's heirs assert that (1) the Trust was being administered in California at the time the court entered judgment against Brett and (2) under California law, a trustee may be ordered to satisfy child support obligations. These assertions are without factual support in the record and irrelevant, since the evidence establishes that the Trust satisfied the child support obligation. The assertions are also contrary to the allegations in Brett's heirs' petition in which they claimed the Trust was being administered under Washington law as of November 5, 2010, the date the Trustee notified them that the "principal place of administration of the trust" was Coupeville, Washington.

whether the amounts designated by the Trustee were valid debts or gifts. Because there was no foundation for this evidence as expert or lay witness opinion testimony, the trial court properly declined to consider it. The only factual evidence in the record is the evidence provided by the Trustee, which includes her declaration, an itemized list of the debts, copies of the supporting documentary evidence, and the declaration of the certified public accountant who performed the forensic accounting of the Trust's financial records and specifically examined the records supporting the loan amounts. Brett's heirs' unsupported assertion that some of the items included in the loan category were gifts is insufficient to defeat summary judgment.

The parties dispute whether Brett's heirs can challenge the calculation of Brett's debt, since the Trustee provided spreadsheets to Brett documenting this deduction on multiple occasions between 2011 and 2017 and he asserted no claim and raised no objection. See RCW 11.96A.070(1)(a) (three-year statute of limitations for beneficiary's claims if adequately disclosed under TEDRA). But even assuming no time bar applies, the record provides a tenable basis for the Trustee's calculation of Brett's debts.

(4) Distributions to Third Parties

Brett's heirs allege a violation of the Trustee's fiduciary duty based on the distribution of Trust funds to a third party on nine occasions in 2011 and 2012. They claim that the dead man's statute barred the court's consideration of email messages to verify Brett's requests for the distributions. The dead man's statute, RCW 5.60.030, "bars testimony by a 'party in interest' regarding 'transactions'

with the decedent or statements made to [them] by the decedent."[6]  Estate of Lennon v. Lennon, 108 Wn. App. 167, 174, 29 P.3d 1258 (2001). The statute does not, however, bar the admission of documentary evidence. Thor v. McDearmid, 63 Wn. App. 193, 202, 871 P.2d 1380 (1991); Wildman v. Taylor, 46 Wn. App. 546, 731 P.2d 541 (1987).

Notably, Brett's heirs do not argue that the Trustee violated her fiduciary duty by distributing funds to California Child Support Services or their mother. The documentary evidence indicates that Brett requested the other distributions. The Trustee testified that she received Brett's emails and acted in accordance with them. Although the Trustee was unable to locate email messages corresponding to two of the transfers, they were transfers to the same individual, within the same time frame, and were similar in amount to the other transactions, all of which supports the Trustee's determination that they were authorized distributions on Brett's behalf.  There is no evidence to suggest the transactions were unauthorized or that the Trustee acted outside of her discretion and authority.

(5) Accounting

Brett's heirs challenge the court's dismissal of their claim that the Trustee breached her fiduciary duty failing to provide an accounting of the Trust upon their request "prior to the commencement of this litigation."[7]

---

[6] The trial court struck several statements in the Trustee's declaration as barred by the dead man's statute.

[7] The Trust requires the Trustee to make Trust documents and records reasonably available to current Trust beneficiaries and to "report," at least semi-annually, to the beneficiaries. Brett's heirs assert that the Trustee only eventually provided an accounting because they forced

14

Brett's heirs fail to mention that they initiated litigation on July 25, 2018, less than three months after their father died and they became beneficiaries of the Trust. They also fail to mention that it was their stepfather who requested financial information.

Within days of their father's death, Brett's heirs took the position that their stepfather was entitled to communicate with the Trustee on their behalf. But although the Trust requires a beneficiary to provide "express written approval" to authorize the release of Trust information and records to a non-beneficiary, Brett's heirs made their request by means of unsigned emails. Later, in June 2018, Brett's heirs signed power of attorney documents to authorize their stepfather to act as their legal representative, but did not provide those documents to the Trustee until after they filed this litigation. The Trustee requested Brett's heirs' mailing addresses in order to send Trust documents, including an accounting, and a distribution check, but received no response to her request.

Brett's heirs fail to identify any facts supporting the claim that the Trustee breached her fiduciary duty by failing to provide an accounting.

In sum, the evidence clearly shows the manner in which the Trustee distributed the Trust assets, the deductions made from each beneficiary's share and which costs and expenses were allocated to the shares of each beneficiary. There were no genuine issues of material fact to preclude summary judgment.

---

her to do so by filing suit, the evidence indicates that the Trustee had retained an accountant to prepare a formal accounting before the petition was filed.

The uncontroverted facts establish that the Trustee's distributions and allocations were within her authority and discretion.

Attorney Fees

Both parties request attorney fees under RAP 18.1 and RCW 11.96A.150. Brett's heirs contend that they are entitled to attorney fees because they were forced to litigate in order to compel the Trustee to comply with her duties under the Trust. The Trustee, on the other hand, contends that the litigation was both premature and unnecessary. We award fees to the Trustee under RAP 18.1.

Under RAP 18.1(a) we may award a party—who so requests—attorney fees if applicable law provides for such an award. In re Estate of Mower, 193 Wn. App. 706, 729, 374 P.3d 180 (2016). RCW 11.96A.150(1) states:

> The court may order . . . reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the . . . trust involved.

This section applies to appellate courts. Mower, 193 Wn. App. at 729. We may order that the fees be paid by any party to the proceedings or from the assets of the trust involved. Id.

The "touchstone" for TEDRA attorney fee awards is "'whether the litigation resulted in a substantial benefit to the estate.'" Mower, 193 Wn. App. at 728, (quoting In re Estate of Black, 116 Wn. App. 476, 490, 66 P.3d 670 (2003)); see also Matter of Marital Tr. of Graham, 11 Wn. App. 2d 608, 615, 455 P.3d 187 (2019), review denied sub nom., 195 Wn.2d 1026, 466 P.3d 778 (2020). Courts

16

may also consider whether a case presented "novel or unique issues." In re Estate of Stover, 178 Wn. App. 550, 564, 315 P.3d 579 (2013) (quoting In re Guardianship of Lamb, 173 Wn.2d 173, 198, 265 P.3d 876 (2011)).

The Trustee has prevailed on appeal. This litigation neither benefitted the Trust nor raised novel or unique issues, the resolution of which added benefit to the appeal. We deny Brett's heirs' request for fees, and award the Trustee reasonable attorney fees, subject to her compliance with RAP 18.1(d).

Affirmed.

Andrus, A.C.J.

WE CONCUR: